James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991
jpatterson@hpolaw.com
amartin@hpolaw.com

Bruce W. Steckler (pro hac vice pending)
Mazin A. Sbaiti, State Bar No. 275089
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181
bsteeker@baronbudd.com
msbaiti@BaronBudd.com

*Attorneys for Plaintiffs and the Class*

ORIGINAL
FILED

FEB 16 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COX and BRADLEY BERENTSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARUS MARKETING GROUP, LLC., a Connecticut corporation; PROVIDE-COMMERCE, INC., a Delaware corporation; DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: CV11 0729<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOL. OF ELEC. FUNDS TRANS. ACT<br>2. VIOL. OF ELEC. COMMUN. PRIV. ACT<br>3. CIVIL THEFT<br>4.-5. COMMON LAW NEGLIGENCE<br>6.-7. UNJUST ENRICHMENT<br>8.-9. FRAUD<br>10.-11. VIOL. OF UNFAIR BUSINESS PRAC. ACT<br>12. VIOL. OF CONST. RIGHT TO PRIVACY<br>13. UNLAWFUL INTRUSION<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiffs Daniel Cox and Bradley Berentson, on behalf of themselves and all others similarly situated, allege upon personal knowledge, information and belief as follows:

///

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

I.      DEFENDANTS ADVERTISE A 'FREE' DISCOUNT AND THEN SLIP IN A
        MONTHLY CHARGE FOR A MEMBERSHIP PROGRAM THAT WAS *NOT*
        AUTHORIZED

1.      Plaintiffs Cox and Berentson bring this class action against defendants Clarus Marketing Group, LLC ("CMG") and Provide-Commerce, Inc. ("Provide-Commerce") (together, "Defendants") for unlawfully using their and absent class members' payment information to generate remarkable monthly profits.  The scam is simple:  Plaintiffs and class members were shopping at one of the many websites owned and operated by Provide-Commerce.  As they were completing their online purchases, Defendants provided them with an advertisement offering them "Free Shipping" on this and 12 future transactions.   By merely clicking on that ad – they did not even have to accept the offer – Plaintiffs and the Class unwittingly agreed to join a membership program operated by CMG that costs around $9.00 to $15.00 per month.

2.      This is no mistake or coincidence and has happened to thousands of people across the country.  CMG and Provide-Commerce have entered into an agreement whereby CMG is given the capability to manipulate Provide-Commerce's website for the purpose of soliciting Provide-Commerce's customers.  This requires technological as well as logistical coordination of their efforts.  CMG and Provide-Commerce split the spoils – CMG pays Provide-Commerce bounties on each "acquisition" – as well as certain commissions.   Both have made millions in the process.

3.      Plaintiffs are victims of this scam, as are thousands of Class members.  They never agreed to the subscription.  How could they?  They were told that this was a "Free Shipping" offer as an inducement to shopping with Provide-Commerce.  But it was not free at all.  The reality is that the true terms of the "free" shipping offer were purposefully obscured on the operative pages.  There was no indication whatsoever at any time during the transaction that repeat billing was part of the deal.  Plaintiffs and the Class reasonably interpreted Defendants' offer to be a reward for shopping this time around plus an inducement to come back and shop again later.  That is how coupons work.

///

HARRISON PATTERSON & C CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

4.      The key to the scam is that Plaintiffs and the Class were not even required to enter their credit card or debit card numbers, or billing information to enroll in CMG's membership club.  Rather, Provide-Commerce provides this information directly to CMG under the guise that Plaintiffs and the Class authorized this to happen.  Defendants directed Plaintiffs and the Class to enter innocuous information such as an email address and zip code to create a pretext to charge their debit and credit cards based on the silly claim that Plaintiffs and the Class could lawfully "authorize" Provide-Commerce to pass their billing information to CMG, and "authorize" CMG to begin billing their cards based solely on the provision of an email address or zip code.  In reality, Defendants know that consumers will not take the time to carefully read through the misleading WebPages and disclosures that Defendants intentionally designed to mislead them if all consumers have to do is enter their email addresses.  Why would they?  An email address is relatively harmless means of contact that is generally freely exchanged and provided.  It certainly is not a signature, mark of acceptance, or in any way related to credit card billing or payment information.

5.      Defendants' scam is akin to a person walking into a retail store and being offered a coupon to use in the store in exchange for providing his or her email address on a form.  And then having his or her credit or debit card information subsequently forwarded by the store to the person standing outside with the form, who incidentally was wearing the store uniform, and charged repeatedly by that person, based on the fact that somewhere on the form (and perhaps even on the back or the second page) there was a disclosure that the customer was "authorizing" this to happen.  Nobody would contend that this is an acceptable business practice.  Rather, the person making the unauthorized charges and the store employee sharing the billing information would be in jail!  Defendants are doing the exact same thing, and likewise claiming that their unsuspecting victims are to blame because they should have read all the disclosures before providing their email addresses to "enroll" in the rewards program.  But just as the shopper walking into a store has no reason (and likely no time) to read a solicitor's forms before providing his or her email address, Plaintiffs and the thousands of putative class members had no reason, and most importantly, no obligation to read Defendants' form "enrollment" page before

1   providing their email addresses.  Consumers simply have no reason to believe that they could

2   "authorize" someone to charge their credit or debit cards merely by giving out their email

3   address. And, in fact, they cannot.

4       6.      Plaintiffs and the Class allege state and federal causes of action on behalf of

5   themselves and various classes of injured consumers.  They seek an end to the practice, as well

6   as to recover their damages, restitution, punitive damages and attorneys' fees.  In a word, they

7   seek justice.

8   II.     **JURISDICTION AND VENUE**

9       7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal

10  question), 15 U.S.C. § 1693m(g)(EFTA) and 18 U.S.C. §§2510, *et seq.* (ECPA).  This Court has

11  supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12      8.      Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action

13  because this Court has personal jurisdiction over the Defendants under 28 U.S.C. § 1391(c), and

14  a substantial amount of the events giving rise to the claim occurred in this District.

15  III.    **THE PARTIES**

16      9.      Plaintiff Daniel Cox is an individual who at all times mentioned herein resided,

17  and continues to reside, in Alameda County, California.

18      10.     Plaintiff Bradley Berentson is an individual who at all times mentioned herein

19  resided, and continues to reside, in Omaha, Nebraska.

20      11.     Defendant Provide-Commerce is a Delaware corporation with a principal place of

21  business located at 4840 Eastgate Mall, San Diego, California 92121.  Provide-Commerce is an

22  e-commerce company that operates at least five online stores: RedEnvelope, ProFlowers, Cherry

23  Moon Farms, Secret Spoon, and Shari's Berries.  At all times relevant to this dispute, Provide-

24  Commerce's principal place of business was California, it actively solicited and engaged in

25  business and commerce in this jurisdiction, all significant decision-making with respect to the

26  conduct alleged herein occurred in California, and it committed torts in this jurisdiction the

27  impacts of which were felt in this jurisdiction, directly and through its aiding and abetting of, and

28  conspiracy with, CMG in committing the acts complained of herein.  Provide-Commerce's terms

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   and conditions of use published on its website contain a choice of law clause selecting California

2   law for any legal action "regardless of conflict of law principles".

3       12.    Defendant CMG is a Connecticut corporation with its principal place of business

4   at 449 Silas Deane Hwy., Wethersfield, Connecticut 06109.   At all times relevant to this dispute,

5   CMG actively solicited and engaged in business and commerce in this jurisdiction, and

6   committed torts in this jurisdiction the impacts of which were felt in this jurisdiction.   CMG

7   engaged in commerce and committed torts in this jurisdiction directly and through its aiding and

8   abetting of, and conspiracy with, Provide-Commerce in committing the acts complained of

9   herein.   CMG's membership agreements contain a provision indicating that Connecticut law

10   governs membership disputes and that nothing in the agreements will deprive anyone of the

11   benefits of their own state's consumer protection laws.

12       13.    Plaintiffs and the Class are ignorant about the true names of defendants sued as

13   DOES 1 through 50, inclusive, and their wrongful conduct, and therefore sue these defendants by

14   fictitious names.   Plaintiffs and the Class will seek court leave to amend this complaint to allege

15   their true names and capacities when ascertained.   Plaintiffs and the Class allege on information

16   and belief that at all relevant times, DOES 1-50, inclusive, were agents, servants, employees,

17   representatives, partners, and related or affiliated entities of defendants, and in doing the things

18   hereinafter mentioned, were acting in the course and scope of their agency, employment, or

19   retention with defendants' permission, consent, authority and ratification.

20   **IV.    FACTUAL BACKGROUND**

21              ***Plaintiffs' Experiences with FreeShipping.com Insiders-Club***

22       14.    Plaintiff Cox purchased flowers from Provide-Commerce's website,

23   ProFlowers.com, using his debit card.   After inputting his payment information, and just before

24   he clicked on the transaction button, Provide-Commerce's website generated an ad for free

25   shipping for this and 12 future transactions.   Plaintiff Cox clicked to receive free shipping on his

26   purchase and to complete his purchase transaction.   He was never requested to input any new

27   information, not even his payment information.   Plaintiff Cox never believed he had joined any

28   type of membership program, including FreeShipping.com Insiders-Club and never intended to

1    do so.

2        15.    A few months ago, Plaintiff Cox discovered unauthorized charges of $8.97 each

3    month to his debit card by CMG.  After closely examining his previous debit card statements, he

4    discovered that CMG had been charging his debit card for numerous months.  When Plaintiff

5    Cox's debit card is charged, the money is immediately and directly withdrawn from his bank

6    account.  He was surprised to see the charges since he never intended to join any membership

7    program or authorized Provide-Commerce to share access to his information with CMG.

8        16.    Plaintiff Berentson likewise purchased merchandise from Provide-Commerce's

9    website, RedEnvelope.com, using his credit card.  After inputting his payment information, and

10   just before he clicked on the transaction button, Provide-Commerce's website generated an ad

11   for free shipping for this and 12 future transactions.  Plaintiff Cox clicked to receive free

12   shipping on his purchase and to complete his purchase transaction.  He was never requested to

13   input any new information, not even his payment information.   Plaintiff Berentson never

14   believed he had joined any type of membership program, including FreeShipping.com Insiders-

15   Club and never intended to do so.

16       17.    Recently Plaintiff Berentson discovered unauthorized charges of $14.95 to his

17   credit card by CMG.  After closely examining his previous credit card statements, he discovered

18   that CMG had been charging his credit card for several months.  He was surprised to discover the

19   charges since he never intended to join any membership program or authorized Provide-

20   Commerce to share access to his information with to CMG.

21       18.    On information and belief, Plaintiffs are not alone: there are thousands just like

22   them.

23       19.    In sum, Plaintiffs and the Class never intended to enroll in the FreeShipping.com

24   Insiders-Club program or in any other program for that matter.  Defendants' scheme was

25   intentionally designed to "enroll" consumers into the Insiders-Club without their knowledge.

26   Plaintiffs and the Class were deceptively tricked into providing certain innocuous information or

27   clicking on certain links so Provide-Commerce could claim that it had authorization to transmit

28   to CMG (or allow CMG to intercept) their debit and credit card information, and so CMG could

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   claim that it had authorization to bill Plaintiffs and the Class' debit and credit cards. All the

2   while, Provide-Commerce and CMG had actual knowledge that Plaintiffs and the Class did not

3   intend to enroll in any paid membership club. And Defendants further knew, or reasonably

4   should have known, that Plaintiffs and the Class could not lawfully authorize the transfer of their

5   billing information, or charges to their debit and credit cards, merely by providing their email

6   addresses and/or zip codes.

7                              ***Defendants' Deceptive Sales Practices***

8          20.    CMG and Provide-Commerce created a nefarious scheme to trick visitors to

9   Provide-Commerce's websites into enrolling in CMG's monthly programs. Provide-Commerce

10  received commissions, "kickbacks" and "bounties" to reward its participation.

11         21.    Just like every other Class member, Plaintiffs were making a purchase on a

12  Provide-Commerce website (Proflowers.com and RedEnvelope.com). Just as they had provided

13  their debit and credit card information to Provide-Commerce, an advertisement appeared on

14  Plaintiffs' computer screen offering free shipping on the purchase and on future purchases.

15  When Plaintiffs clicked on a link to redeem the Free Shipping offer, they were redirected to an

16  ad-page that directed them to enter their email address and zip code to redeem the offer. For

17  instance, Plaintiff Cox was directed to an ad-page that stated:

18         **Exclusive OFFER ProFlowers® Get Free Shipping on THIS order!**
19         **PLUS, Free Shipping Rebates On 12 Future Proflowers® Orders!**
           **One-Time Offer. Please Confirm Your Email And Zip Code As Your**
20         **Electronic Signature To Activate Your Benefits.**

21  Plaintiff Berentson encountered a similar ad-page.

22         22.    There was no obvious indication that the electronic signature was for "benefits"

23  other than "Free Shipping on THIS order! PLUS, Free Shipping Rebates On 12 Future

24  Proflowers Orders" or RedEnvelope Orders. And there was no reason to believe that Plaintiffs

25  were in any danger whatsoever of accidentally signing up for some paid membership.

26  Consumers justifiably rely on the correct assumption that they cannot lawfully authorize

27  someone to begin charging their debit or credit cards merely by providing their email address or

28  zip code. An email address and zip code is not a signature, mark of consent, or in any way

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1  associated with credit or debit billing information. It certainly is not a generally known or

2  accepted method to enter into or authorize a payment obligation. An email address is a means of

3  contact that is generally freely provided given its relatively harmless nature. Because an email

4  address and zip code cannot constitute lawful authorization for credit and debit card charges,

5  consumers have no obligation to carefully review Defendants' advertisements - which are

6  otherwise intentionally designed to deceive them - before providing this seemingly innocuous

7  information.

8      23.    Plaintiffs were never told that they were no longer on the Proflowers.com and

9  RedEnvelope.com website anymore – or had unknowingly been directed to a CMG interface!

10 They also were never directed to the truth about what was going to happen to their debit and

11 credit card information – that by accepting the free shipping offer, they were unknowingly

12 "authorizing" CMG to begin billing a monthly fee to the debit and credit cards they had provided

13 to Provide-Commerce.

14     24.    The hidden "small print" that Defendants claim to justify their nefarious activities,

15 states, for example:

16         Start your NO COST 30-day review period with our compliments
           and claim the introductory cash-back rebate on your shipping
17         charges, up to $15.00. If you decide not to continue your
           FreeShipping.com Insiders-Club membership, simply log on to
18         cancel during your review period. Otherwise, we'll automatically
           extend Insiders-Club benefits for just $9.97 per month, billed by
19         FreeShipping.com to the credit card you entered during your
           ProFlowers purchase. Please note, by signing up and clicking the
20         "Submit" button, your original Enrollment Details will be stored
           on our servers, as will the following information which will be
21         PGP encrypted and transmitted securely through SSL encryption
           from your most recent ProFlowers order to FreeShipping.com to
22         secure your membership: credit card information; name; billing
           address; and order ID number. Your credit card will not be
23         charged during your NO COST 30-DAY REVIEW PERIOD.

24 This so-called disclosure is intentionally hidden from the consumer. But perhaps most

25 importantly, the disclosure assumes that Plaintiffs could lawfully authorize CMG to begin billing

26 their debit or credit card merely by entering their email and zip code somewhere else, and

27 without ever even providing their debit or credit card number, or billing information to CMG.

28 This is preposterous. Especially considering that Defendants know Plaintiffs and the Class did

not want to join CMG's Savings Club or had no idea they were authorizing CMG to begin billing them, and considering that Defendants intentionally designed the enrollment process to enroll Plaintiffs and the Class without this basic knowledge and understanding. Defendants should not now be allowed to complain that Plaintiffs and the Class should have done more to investigate the consequences of providing their email addresses and zip codes.

25.     Once enrolled, Plaintiffs and the Class are billed monthly until they notice the charges and cancel their memberships. Plaintiffs and the Class received no notice that they had enrolled, and were not provided with a copy of their purported "authorization" for Provide-Commerce to pass their billing information to CMG, and for CMG to begin billing them. The relatively small monthly charges are often hard to detect and show up from an unfamiliar vendor. This often allows Defendants' scam to go undetected for numerous months – even years.

### *CMG And Provide-Commerce's Acted Jointly*

26.     CMG paid Provide-Commerce commissions and bounties for each "subscriber" that is ensnarled by this deceptive business practice. This "business" model has been extremely lucrative for both Provide-Commerce and CMG. Based on information and belief, Provide-Commerce receives millions upon millions of dollars each year in payments from CMG, and CMG generates tens of millions in revenue from unsuspecting consumers.

27.     CMG intentionally designed its web strategy to infiltrate the interaction between Provide-Commerce and its customers, to exploit the latter's ingrained habits and widely shared assumptions about the usual steps involved in online shopping transactions.

28.     Defendants made every effort to ensure that the Plaintiffs and the Class were never alerted to the fact that they might be entering into a second transaction. Defendants made sure that Plaintiffs and the Class were at most entering one or two pieces of benign information under the mistaken assumption that they were cashing in on a "point of purchase" coupon that also invited them to shop later on and get the same discount of future shipping. Defendants intentionally and knowingly avoided requiring consumers to re-enter their credit or debit card information as a condition of enrollment, which in turn ensured that Plaintiffs and the Class would never be alerted to the fact that they were actually going to have to *pay* for this "free"

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   shipping offer that popped up.

2       29.    Harvard Business School Professor, Benjamin Edelman stated, in connection with

3   a major U.S. Senate investigation of these very practices, that consumers routinely and habitually

4   rely on the request of complete billing information as notice that they may incur financial

5   obligations:

6           Consumers rely on the process of providing a credit card number

7           as a barrier to unexpected charges.  Users rightly expect that by
        clicking from site to site, button to button, they do not incur
        financial obligation.  This expectation is part of what makes the

8           web fun, flexible, and low-risk:  Users believe they cannot incur
        financial obligations except by typing their credit card numbers,

9           and users expect to be able to cancel an unwanted transaction if a
        site requests a credit card number that a user does not care to

10          provide.

11      30.    Provide-Commerce and CMG jointly implemented their scheme. Provide-

12  Commerce deceptively lured customers to its site to purchase goods and service it offered.

13  Provide-Commerce then gave CMG the access and capability of exacting its scam on Plaintiffs

14  and the Class.   Through sleight of hand, CMG was able to obtain Plaintiffs and the Class'

15  confidential credit card, debit card and other private information necessary to extract money,

16  which generated substantial revenue.  CMG could not have done it without Provide-Commerce's

17  help.

18      31.    Provide-Commerce further acknowledges on its website that FreeShipping.com

19  Insiders-Club is a joint venture between the two companies.

20                   ***Provide-Commerce Breaks Its Own Rules***

21      32.    Provide-Commerce's conduct violated its own published policy:

22  **Personally Identifiable Information:**

23          ...

24      Personally Identifiable Information might include your name, mailing

25      address, telephone number, mobile phone number, email address, and other
    identification and contact information.... We may also collect certain
    financial information, like your credit card number... whenever we do so,

26      we will attempt to provide a link to this Policy so that you can confirm how
    this information will be used. With this information, we can fill your service

27      and product orders and better provide you with personalized services. You
    also may have the option of importing information into certain Sites from

28      third-party software.

-10-

...

> Except as otherwise stated in this Policy, we do not sell, trade or rent your Personally Identifiable Information collected on our Sites to others. The information collected by our Sites is used to process orders, to keep you informed about your order status, to notify you of products or special offers that may be of interest to you, and for statistical purposes for improving our Sites. We will disclose your Personally Identifiable Information to third parties for tracking purposes, to charge your credit card (or process your check or money order, as appropriate), fill your order, improve the functionality of our Sites, customize our marketing efforts with you and perform statistical and data analyses, deliver your order and deliver promotional emails to you from us. These third parties may not use your Personally Identifiable Information other than to provide the services requested by us.

33.     Based on its own policies, Provide-Commerce claims that it will not disclose consumers' confidential billing information absent customers' express agreement. To the extent Provide-Commerce's policy allows it to transmit its consumers' confidential billing information to third parties, the policy suggests that it is only to effectuate the transaction with Provide-Commerce. But, despite its written policy, Provide-Commerce shared access to Plaintiffs and the Class' financial information with CMG. To the extent Provide-Commerce wanted to disclose that it would maintain CMG's programs, its terms are unconscionable.

34.     Due to Defendants' deceptive business practices, Plaintiffs and the Class thought that they were completing their purchase transaction on Provide-Commerce's websites and receiving a free savings offer from Provide-Commerce. Had Plaintiffs and the Class known that they had to pay a monthly membership fee to a third party to receive free shipping on their purchase, they would have ignored the unscrupulous offer.

***Numerous Consumers Have Posted Complaints About Defendants' Membership Programs***

35.     Plaintiffs' experiences with Defendants mirror those of thousands of other consumers. In fact, the Internet is replete with consumer complaints about CMG and its membership programs, which can be found on various consumer protection websites such as www.ripoffreport.com, and www.complaintsboard.com. These complaints evidence the uniform nature and application of Defendants' deceptive business practices.

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

### *The United States Senate Committee's Investigation*

36.    Because consumer complaints have been so pervasive, in May 2009, Senator John D. Rockefeller IV, Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation launched an investigation into e-commerce marketing practices that generate thousands of monthly charges to consumer credit and debit cards. The investigation focused on three Connecticut-based direct marketing companies with the same business model as CMG, as well as hundreds of online websites and retailers that partner with the companies.

37.    The Senate Committee issued two reports finding, among other things, that the data pass enrollment process was deceptive and misleading, particularly since "Consumers rely on the process of providing a credit card number as a barrier to unexpected charges." The Committee determined that companies such as CMG utilize a two-step business model: (1) to improperly charge consumers' credit cards for services it knows consumers did not intend to purchase and were not using, and (2) then refund as small a portion of this money as possible after consumers discovered the charges.

38.    The Committee found the companies such as CMG use "aggressive sales tactics intentionally designed to mislead online shoppers. [It] exploits shoppers' expectations about the online purchasing process to charge millions of consumers each year for services the consumers do not want and do not understand that they have purchased." (Exhibit. 1, Preliminary Report at p. 30, "Conclusion")(emphasis supplied).

39.    The Senate described the entire process utilized by sham marketing companies such as CMG:

> These tactics involve selling unfamiliar membership programs to consumers who are in the process of purchasing familiar products offered by trusted websites.... [C]ompanies gain access to online consumers by entering into financial agreements with reputable online websites and retailers.  In exchange for "bounties" and other payments, reputable on-line retailers agree to let [the companies] sell club memberships to consumers as they are in the process of buying movie tickets, plane tickets, or other online goods and services.  The sales tactics used by these [companies] exploit consumers' expectations about the online 'checkout' process.
>
> With the cooperation of their online 'partners,' [companies] insert their sales offers into the 'post-transaction' phase of an online purchase, after consumers have made a purchase but before they have completed the sale confirmation process.  These offers generally promise cash back rewards

CLASS ACTION COMPLAINT

and appear to be related to the transaction the consumer is in the process of completing. Misleading 'Yes' and 'Continue' buttons cause consumers to reasonably think they are completing the original transaction, rather than entering into a new, ongoing financial relationship with a membership club operated by [an unrelated third party].

Even more misleading and confusing is the 'data pass' process [these companies] and their partners use to automatically transfer consumers' credit or debit card information from the familiar web seller to the third-party membership club. Passing consumers' billing information directly to the [third-party membership club], without requiring consumers to re-enter it, deprives consumers of notice that they are entering a new, ongoing financial relationship with an unfamiliar company. After a 30-day 'free trial' period, [the companies] begin charging the consumer a monthly fee of $10-$20 dollars until the consumer cancels the membership. (Exh. 1, Preliminary Report at i-ii.)

40.     In its' second and final report, the Senate concluded:

"Once they had acquired consumers' billing information and <u>deceptively enrolled</u> consumers in their [] membership clubs, [marketing companies] made money so long as consumers took no action. [They] charged consumers month after month for services the consumers did not use <u>and did not understand that they had purchased.</u> ... This abusive "post-transaction" sales industry was able to flourish because reputable websites were willing to share their customers' billing information ... and because the credit card systems processed <u>millions of unauthorized charges.</u>

(Exhibit 2 at p. 20, "Conclusion")(emphasis supplied).

### *The Data Pass Process Utilized By CMG Violates Credit Card Company Operating Rules And Generally Accepted Practices*

41.     The Senate Committee determined that companies such as CMG are not following credit card processing rules, noting that "the 'data pass' process used by online merchants to enroll consumers in membership clubs appeared to violate both the generally-accepted norms of online commerce and the credit card companies' rules for online transactions." (Exh. 2 at 2)

42.     American Express, MasterCard, and Visa have long-established rules for merchants who accept their credit cards, and even more specific rules for merchants who charge consumers' credit cards through "card-not-present" transactions, such as online transactions where the merchant does not physically handle the credit card.

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

43.     In response to the Committee's request for information about these rules, MasterCard and Visa acknowledged that the data pass method utilized by companies such as CMG violated a number of their general rules for merchants or their specific rules for card-not present transactions.

44.     MasterCard informed the Committee that the targets of the investigation violated MasterCard Rule 5.10.2, which states, "A Merchant must not request or use Card account number or personal Cardholder information for any purpose that it knows or should have known to be fraudulent or in violation of the Standards, or for any purpose that the Cardholder did not authorize." On information and belief, CMG has likewise violated MasterCard's rules.

45.     Visa informed the Committee that the target companies failed to comply with four different Visa U.S.A. Operating Regulations that require adequate disclosures to cardholders. On information and belief, CMG also has not complied with these Visa operating regulations.

46.     As determined by the Senate investigation, there is no doubt that Defendants' business model is to improperly charge consumers' credit and debit cards for services it knew consumers did not intend to purchase and were not using, and then refund as small a portion of this money as possible after consumers discovered the charges.  CMG and Provide-Commerce are knowingly and intentionally creating consumer confusion with these membership programs and perpetrating a scam.

## V.   PLAINTIFFS' CLASS ACTION ALLEGATIONS

47.     **The Class**. This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of:

> All persons residing in the United States who (1) made or attempted to make a purchase on a Provide-Commerce e-commerce site, (2) did not provide their credit card number, debit card number, or billing information directly to Clarus Marketing Group ("CMG"), and (3) had their credit or debit card charged, or bank account debited, by CMG for membership fees or dues in FreeShipping.com Insiders-Club, Internet Insiders-Club, Movie Ticket Discounts, Insiders Coupons, or any other membership program maintained by CMG at any time from four years preceding the filing of this case until present.

48.     **The Debit Card Subclass.**   This lawsuit is also brought on behalf of an ascertainable nationwide subclass consisting of:

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

-14-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

All Class Members whose debit cards or bank accounts were charged by CMG.

49.     **California Subclass:**  This lawsuit is also brought on behalf of an ascertainable subclass consisting of:

> All Class Members that were residents of the State of California at the time that they were enrolled in any CMG membership program and/or had their credit or debit card charged, or bank account debited, by CMG.

50.     **Excluded from Class and Subclasses:**  Excluded from the Class and Subclasses are defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which defendants have a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and Plaintiffs' attorneys.  Also excluded from the Class and Subclasses are any judges presiding over these proceedings and their immediate family.

51.     **Numerosity:**  The Class and Subclasses members are so numerous that joinder of all members is impracticable.  While the exact numbers are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Class and each Subclass consists of thousands of individuals.  Class members are readily ascertainable through appropriate discovery from records maintained by defendants and their agents.

52.     **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions.  No difficulty will be encountered in this case's management to preclude maintenance as a class action.

53.     **Common Questions of Law and Fact Predominate:**  Questions of law and fact common to the Class predominate over questions affecting only individuals.  Among the common questions are:

a.      whether Class members can lawfully authorize Provide-Commerce to transfer their credit card or debit card information to CMG merely by providing their email address and

-15-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1    zip code on an internet form;

2         b.      whether Class members can lawfully authorize CMG to bill their credit cards

3    merely by providing their email and zip code;

4         c.      whether Defendants conduct violates the rules and terms of use established by

5    Credit Card companies such as MasterCard, Visa, and American Express;

6         d.      whether Class members can lawfully authorize CMG to bill their debit card

7    merely by providing their email and zip code;

8         e.      whether an email and/or zip code on a web page constitutes a "written

9    authorization" for purposes of the Electronic Funds Transfer Act ("EFTA");

10        f.      whether CMG provided Debit Card Subclass members with a copy of their

11   purported written authorization to begin charging their debit cards, as required by the EFTA.

12        g.      whether Class members were enrolled in CMG's membership programs;

13        h.      whether Class members were deceived;

14        i.      whether Class members' billing information was obtained CMG without consent;

15        j.      whether CMG "intercepted" Class members' billing information;

16        k.      whether CMG charged Plaintiffs and the Class' credit or debit cards without

17   consent;

18        l.      whether defendants engaged in civil theft;

19        m.      whether defendants engaged in fraud;

20        n.      whether defendants obtained unjust enrichment;

21        o.      whether defendants engaged in conversion;

22        p.      whether defendants engaged in unfair or unlawful business practices;

23        q.      whether defendants engaged in false advertising;

24        r.      whether defendants made intentional or negligent misrepresentations;

25        s.      whether defendants breached its contractual obligations;

26        t.      whether defendants' contracts, agreements, or policies contained unconscionable

27   terms;

28        u.      whether CMG violated the EFTA;

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1    v.    whether CMG violated the Electronic Communications Privacy Act;

2    w.    whether Plaintiffs and the Class are entitled to declaratory relief;

3    x.    whether Plaintiffs and the Class are entitled to injunctive relief; and

4    y.    whether Plaintiffs and the Class sustained damages and, if so, the proper measure

5    of those damages.

6    54.    **Typicality:**  Plaintiffs' claims are typical of other Class members' claims because

7    they, like every other Class member, were exposed to virtually identical conduct.

8    55.    **Adequacy:**  Plaintiffs can fairly and adequately represent the Class' interests;

9    they have no conflicts of interest with other Class members, and they have retained counsel

10   competent and experienced in class action and complex civil litigation.

11   **VI.    CLAIMS FOR RELIEF**

12                    **FIRST CLAIM**
     **For Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.***
13        **Brought by Plaintiff Cox and the Debit Card Subclass**
                        **Against CMG**
14

15   56.    Plaintiff Cox refers to and incorporates by reference the above paragraphs as

16   though set forth fully herein.

17   57.    The Electronic Funds Transfer Act or EFTA provides a basic framework

18   establishing the rights, liabilities, and responsibilities of participants in an electronic fund

19   transfer system.  15 U.S.C. § 1693.  The primary objective of the EFTA "is the provision of

20   individual consumer rights." *Id.*

21   58.    Plaintiff Cox and the Debit Card Subclass each maintained an "account" as that

22   term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C.

23   § 1693a(5).

24   59.    CMG engaged in "unauthorized electronic funds transfers," as that term is defined

25   in 15 U.S.C. § 1693a(11), by debiting the bank accounts of Plaintiff Cox and the Debit Card

26   Subclass without express authorization.

27   60.    The EFTA provides that "[a] preauthorized electronic fund transfer from a

28   consumer's account may be authorized by the consumer only in writing, and copy of such

-17-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). "In case of

2   preauthorized transfers from a consumer's account to the same person which may vary in

3   amount…the designated payee shall, prior to each transfer, provide reasonable advance notice to

4   the consumer, in accordance with the regulations of the Board, of the amount to be transferred

5   and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

6       61.    The EFTA's implementing regulations, known as Regulation E and codified at 12

7   C.F.R. §§ 205 *et seq.,* provide: "Preauthorization electronic fund transfers from a consumer's

8   account may be authorized only by a writing signed or similarly authenticated by the consumer.

9   The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. §

10  205.1(d).   According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's

11  requirement that electronic fund transfers "be authorized by the consumer 'only in writing'

12  cannot be met by a payee's signing a written authorization on the consumer's behalf with only an

13  oral authorization from the consumer." Regulation E, Supp. I, Part 10(b), ¶ 3. When "a third-

14  party payee fails to obtain the authorization in writing or fails to give a copy to the consumer…it

15  is the third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

16      62.    CMG violated the EFTA because it initiated electronic fund transfers from

17  Plaintiff Cox's account, as well as the Debit Card Subclass' accounts, without obtaining prior

18  written authorization.    Neither an email address, nor a zip code constitutes a "written

19  authorization" or a "writing signed or similarly authenticated" for purposes of the EFTA.

20      63.    CMG also violated the EFTA because it initiated electronic fund transfers from

21  Plaintiff Cox's account, as well as the Debit Card Subclass's accounts, without providing

22  Plaintiff Cox or the Debit Card Subclass with copies of their written authorizations or providing

23  reasonable advance notice of the amount to be transferred and the scheduled date of the transfer.

24  On information and belief, CMG does not even obtain or keep a copy of the completed forms

25  bearing Plaintiff Cox' and the Class' supposed written authorizations.  And CMG certainly did

26  not provide Plaintiff Cox and the Class with copies of these completed forms.

27      64.    Under 15 U.S.C. § 1693m, Plaintiff Cox and the Debit Card Subclass seek

28  damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other

1    further relief as the Court deems appropriate.

2                              **SECOND CLAIM**
     **For Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510**
3                     **Brought by Plaintiffs and the Class**
                              **Against CMG**
4

5        65.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set

6    forth fully herein.

7        66.    The Electronic Communications Privacy Act ("ECPA") seeks to protect

8    individuals from interception and monitoring of their electronic communications.  The ECPA

9    provides that liability may be imposed on any individual who "intentionally intercepts,

10   endeavors to intercept, or procures any person to intercept or endeavor to intercept, any wire,

11   oral, or electronic communication." 18 U.S.C. § 2511(1) (a).

12       67.    The transmission of data between Plaintiffs' and the Class' computers and various

13   internet websites constitutes "electronic communications" within the meaning of 18 U.S.C. §

14   2510.

15       68.    CMG  intentionally  intercepted  these  electronic  communications  without

16   Plaintiffs' and the Class' knowledge, consent or authorization.  Specifically, Plaintiffs and the

17   Class transmitted data from their computers to Provide-Commerce, for the purpose of purchasing

18   products from Provide-Commerce's website only.

19       69.    While Plaintiffs and the Class were in the process of transmitting this information,

20   CMG intercepted Plaintiffs' and the Class' data without their knowledge or consent.

21       70.    CMG intercepted Plaintiffs' and the Class' communications for the purpose of

22   committing a wrongful tortious or unlawful act — to make and profit from unauthorized charges

23   to Plaintiffs' and the Class' credit or debit accounts.

24       71.    Under 18 U.S.C. § 2520, Plaintiffs and the Class are entitled to preliminary,

25   equitable and declaratory relief, in addition to statutory damages of the greater of $40,000 or

26   $100 per day per violation, actual and punitive damages, reasonable attorneys' fees, and CMG's

27   profits obtained from the above described violations.

28   ///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

**THIRD CLAIM**
**For Civil Theft – Treble Damages**
**Brought by Plaintiffs and the Class**
**Against CMG**

72.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

73.    Connecticut General Statutes § 52-564 provides that: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

74.    CMG explicitly or implicitly made false representations and statements of existing facts with the intent to deceive Plaintiffs and the Class by concealing or omitting the following material facts: (a) while completing a transaction with Provide-Commerce, CMG would gain access to Plaintiffs' and the Class' confidential billing information; (b) CMG would automatically charge Plaintiffs and the Class a monthly fee for CMG's membership programs, including FreeShipping.com Insiders-Club; and (c) Provide-Commerce and CMG profit from Plaintiffs and the Class being enrolled in CMG's membership programs.

75.    Simply put, CMG stole money from Plaintiffs and the Class when it knowingly deceived them into believing that by clicking on the advertisement, they would be receiving a **free** savings benefit. Instead, when Plaintiffs and the Class clicked on the advertisement, they were unknowingly enrolled into a membership program, like FreeShipping.com Insiders-Club, that charged around $9.00 to $15.00 monthly fee. This scheme is the basis for the civil theft claim, and is equivalent of each Class member having money stolen from his or her wallet each month.

76.    CMG's silence and omissions as to the material facts outline above were material insofar as such silence and omissions caused Plaintiffs and the Class, without their knowledge, to enable CMG to steal around $9.00 to $15.00 per month from each of them.

/ / /

/ / /

/ / /

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

## FOURTH CLAIM
### For Common Law Negligence
### Brought by Plaintiffs and the Class
### Against Provide-Commerce

77.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

78.     Provide-Commerce owed a duty of care to Plaintiffs and the Class to reasonably protect their confidential identifying information and payment information, and to reasonably inform them of the use of that information for purposes other than the one for which they were visiting Provide-Commerce's site.

79.     Provide-Commerce negligently failed to take reasonable steps to protect Plaintiffs' and the Class' identifying information and payment information from being intercepted, obtained, and/or used by another person without authorization.

80.     Provide-Commerce negligently failed to comply with Credit Card company standard operating procedures and generally accepted practices when passing Plaintiffs' and the Class members' credit card information to CMG, knowing that CMG intended to charge the credit cards without proper authorization.

81.     Provide-Commerce negligently permitted CMG to interact with Plaintiffs and the Class in a manner that allowed them to obtain and use their confidential identifying information and payment information without authorization.

82.     Provide-Commerce negligently failed to take affirmative steps to alert Plaintiffs and the Class of CMG's intent of and means to obtaining and using their confidential identifying and payment information.

83.     Provide-Commerce negligently represented to Plaintiffs and the Class that it would not disclose to or share their billing information with CMG unless authorized to do so.

84.     Provide-Commerce negligently omitted to inform Plaintiffs and the Class that CMG would be able to access and/or intercept their billing information.

85.     Provide-Commerce negligently shared its customers' billing information with CMG without informed authorization, and while knowing that CMG was going to charge

-21-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   Plaintiffs' and the Class' credit and debit accounts for a sham membership program without

2   consent.

3       86.    Provide-Commerce further misrepresented that Plaintiffs and the Class could

4   receive a "free" benefit by providing certain information, such as an email address and zip code.

5       87.    Provide-Commerce knew, or reasonably should have known that Plaintiffs and

6   the Class would likely not see the hidden terms and conditions, and that Plaintiffs and the Class

7   would not have provided any personal information if they knew Provide-Commerce via CMG

8   would thereafter begin billing their credit or debit cards.

9       88.    Provide-Commerce also knew or should have known that Plaintiffs and the Class

10  would not have intentionally enrolled in any membership program if CMG openly asked for their

11  credit or debit card information

12      89.    Provide-Commerce's conduct caused Plaintiffs and the Class to suffer

13  unauthorized charges to their credit and debit cards.

14      90.    Provide-Commerce's representations were false, and their omissions were

15  material.

16      91.    At the time of Provide-Commerce's representations and omissions, Plaintiffs and

17  the Class were ignorant of the representations' falsity and were ignorant of the omitted and/or

18  concealed facts. In reliance on these misrepresentations and without the benefit of the material

19  omissions, Plaintiffs and the Class were damaged by unauthorized charges to their credit and

20  debit cards. Had Plaintiffs and the Class known the actual facts, they would have not purchased

21  merchandise from Provide-Commerce or tried to obtain the seemingly complimentary savings

22  benefit.

23      92.    Reliance on Provide-Commerce's representations and omissions was justified

24  because Plaintiffs and the Class had no reason to believe that unauthorized charges were going to

25  be made to their credit and debit accounts.

26      93.    Plaintiffs and the Class have been damaged by Provide-Commerce's negligent

27  misrepresentations in an amount to be proven at trial.

28  ///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

94.     CMG accessed and received payments from Plaintiffs and the Class' credit and debit card accounts without their legal consent and thus knowingly received a benefit from Plaintiffs and the Class.

95.     CMG had no lawful or legitimate basis to access and charge Plaintiffs and the Class' credit and debit cards for fees associated with its membership programs, like FreeShipping.com Insiders-Club.

96.     Provide-Commerce received, and continues to receive, substantial fees from CMG's charging of Plaintiffs' and the Class' credit and debit card accounts and/or using Plaintiffs and the Class' billing information to earn money for itself.

97.     These fees, compensation, and/or profits constitute unjust enrichment for Provide-Commerce and must be disgorged, and restored to Plaintiffs and the Class.

98.     By billing Plaintiffs' and the Class' credit and debit accounts without authorization as set forth herein, Provide-Commerce received unearned financial gains and unjustly retained the financial gains at Plaintiffs and the Class' expense, which it would be inequitable for Provide-Commerce to retain.

## FIFTH CLAIM
### For Common-Law Negligence
### Brought By Plaintiffs and the Class
### Against CMG

99.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

100.    CMG owed a duty of care and honesty to Plaintiffs and the Class to ensure that CMG was not obtaining and using Plaintiffs and the Class' confidential identifying and payment information under misleading circumstances.

101.    CMG breached its duty by obtaining and using Plaintiffs and the Class' confidential identifying and payment information without ensuring that Plaintiffs and the Class had given informed consent.

102.    CMG negligently failed to comply with Credit Card company standard operating procedures and generally accepted practices by utilizing the data pass process to obtain Plaintiffs

-23-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   and the Class members' credit card information from Provide-Commerce, and then charging their

2   cards without proper authorization.

3       103.    CMG breached its duty and represented to Plaintiffs and the Class that they would

4   receive a "free" benefit from Provide-Commerce by providing limited personal information, such

5   as an email address and zip code, but neglected to inform Plaintiffs and the Class in a meaningful

6   way that they would be charged a monthly fee.

7       104.    CMG knew, or reasonably should have known that Plaintiffs and the Class

8   would likely not see the hidden terms and conditions, and that Plaintiffs and the Class would not

9   have provided their email addresses or zip codes if they knew CMG would thereafter bill their

10  credit and debit cards.   CMG further knew that Plaintiffs and the Class would not have

11  intentionally enrolled in CMG's membership programs if CMG openly asked for their complete

12  billing information.  So CMG obtained Plaintiffs' and the Class' complete billing information

13  without their knowledge or consent.

14      105.    CMG's conduct caused Plaintiffs and the Class to suffer unauthorized charges to

15  their credit and debit cards.

16      106.    CMG's representations were false, and their omissions were material.

17      107.    CMG would have, through reasonably diligent efforts, discussed that the material

18  omissions were misleading and rendered the advertising and disclosures false.

19      108.    At the time of CMG's representations and omissions, Plaintiffs and the Class

20  were ignorant of the representations' falsity and were ignorant of the omitted and/or concealed

21  facts.  In reliance on these misrepresentations and without the benefit of the material omissions,

22  Plaintiffs and the Class were damaged by unauthorized charges to their credit and debit cards.

23  Had Plaintiffs and the Class known the actual facts, they would have not tried to obtain the

24  seemingly complimentary savings offer.

25      109.    Reliance on CMG's representations and omissions was justified because Plaintiffs

26  and the Class had no reason to believe that unauthorized charges were going to be made to their

27  credit and debit accounts.

28  ///

-24-

110.   Plaintiffs and the Class have been damaged by CMG's negligent misrepresentations in an amount to be proven at trial.

**SIXTH CLAIM**
**For Unjust Enrichment**
**Brought by Plaintiffs and the Class**
**Against Provide-Commerce**

111.   Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

112.   Provide-Commerce received fees, kickbacks or bounties from CMG for permitting CMG to obtain and/or intercept Plaintiffs' and the Class' personal and private credit and debit card information, which CMG then charged for its' unlawful membership program, and thus has knowingly received benefits from Plaintiffs and the Class. Provide-Commerce received multi-millions of dollars in fees, kickbacks, or bounties from CMG.

113.   Provide-Commerce did not contract with Plaintiffs or the Class to provide any benefit in exchange for these fees. Provide-Commerce had no business, lawful or legitimate basis for accepting payments from CMG, which were actually payments CMG obtained from Plaintiffs and the Class by charging their credit and debit cards for fees associated with CMG's membership programs.

114.   Provide-Commerce received, and continues to receive, substantial fees from CMG as a result of CMG's scheme of unlawfully charging Plaintiffs' and the Class' credit and debit card accounts and/or using their billing information to earn money for itself.

115.   These fees, compensation, and/or profits constitute unjust enrichment for Provide-Commerce and must be disgorged.

116.   Plaintiffs and the Class are entitled to recover from Provide-Commerce all amounts wrongfully collected and improperly retained by Provide-Commerce plus interest thereon.

117.   As a direct and proximate result of Provide-Commerce's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Provide-Commerce of the benefit conferred by Plaintiffs and the Class.

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

118.    It would be inequitable for Provide-Commerce to retain the profits, benefits, and other compensation obtained from their wrongful conduct as alleged herein.

### SEVENTH CLAIM
#### Unjust Enrichment
**Brought By Plaintiffs and the Class Against CMG**

119.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

120.    CMG wrongly obtained and/or intercepted Plaintiffs' and the Class' personal and private credit and debit card information, which CMG used to charge its illegal membership program fees and thus has knowingly received benefits from Plaintiffs and the Class.

121.    CMG had no contractual, lawful or legitimate basis for charging Plaintiffs' or the Class' credit and debit cards for fees associated with CMG's membership programs.

122.    Each of CMG's membership terms allowing, and CMG's act of charging Plaintiffs and the Class a monthly fee without Plaintiffs' and the Class' knowing authorization was and is unconscionable and against public policy.

123.    The membership and initiation fees, compensation, and/or profits constitute unjust enrichment for CMG and must be disgorged.  Plaintiffs and the Class are entitled to recover from CMG all amounts wrongfully collected, plus interest thereon.

124.    It would be inequitable for CMG to retain the profits, benefits, and other compensation obtained from its wrongful conduct as alleged herein.

### EIGHTH CLAIM
#### For Fraudulent Misrepresentations/Omissions
**Brought by Plaintiffs and the Class Against CMG**

125.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

126.    Common law fraud is the making of a knowingly false representation or concealment of a material fact with intent to deceive or induce reliance that causes justifiable reliance and resulting damages.  California Civil Code section 1710 further defines deceit/fraud as either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose

2   it, or who gives information of other facts which are likely to mislead for want of communication

3   of that fact; or (4) a promise, made without any intention of performing it.

4       127.   CMG, through Provide-Commerce's website, and with Provide-Commerce's

5   assistance, appeared to offer Plaintiffs and the Class a "free" savings benefit. But in reality it

6   was enrolling Plaintiffs and the Class in a membership program. CMG touted its various savings

7   offers and membership programs, like FreeShipping.com Insiders-Club, as a legitimate savings

8   club that provides free shipping, coupons, gift cards, and other savings benefits to its members.

9   The membership programs, however, provided no meaningful benefits, products or services and

10  functioned as a pretext for CMG to begin charging Plaintiff Cox's and the Class' credit and debit

11  cards.

12      128.   CMG further misrepresented that Plaintiffs and the Class could receive a "free"

13  savings offer by providing some innocuous information, like their email address and zip code.

14  Hidden in an entirely separate area on the webpage were deceptive terms and conditions stating

15  that Plaintiffs and the Class would be charged for enrolling in the membership program. CMG

16  knew, or reasonably should have known, that Plaintiffs and the Class likely would not see the

17  hidden terms and conditions and would not have provided any personal information if they knew

18  CMG would thereafter bill their credit or debit cards. CMG intentionally did not directly request

19  Plaintiffs and the Class to provide their complete billing information — including their name,

20  billing address, and credit or debit card number — because it knew that would have likely put

21  Plaintiffs and the Class on notice that they were about to enter into a separate transaction with

22  CMG, and they would have declined to proceed.

23      129.   CMG also concealed material information about the savings offer and

24  membership programs from Plaintiffs and the Class. CMG failed to disclose that Plaintiffs and

25  the Class would be enrolled in the program and subject to monthly fees.

26      130.   The concealed information is material in that a reasonable consumer would find

27  information important when deciding whether to purchase products from CMG's and Provide-

28  Commerce's websites. Had the concealed information been disclosed to Plaintiffs and the Class,

1   they would have not have attempted to retrieve the purported free savings offers, or would have

2   immediately canceled their membership before they were charged.

3       131.   CMG was and continues to be under a duty to Plaintiffs and the Class to disclose

4   these facts because:

5       a.   CMG is in a superior position to know the truth about the reward membership

6   programs and the business practice of receiving billing through a data pass system; and

7       b.   CMG actively concealed from Plaintiffs and the Class the true nature of the

8   programs and its true practices with respect to the use of billing information.

9       132.   CMG intentionally represented and concealed from and/or failed to disclose to

10   Plaintiffs and the Class the facts described above with the intent to defraud, and for the purpose

11   of inducing Plaintiffs and the Class to involuntarily enroll in illusory membership programs.

12       133.   Plaintiffs and the Class relied on CMG's misrepresentations and omissions and

13   were damaged because unauthorized charges were made to their credit and debit accounts.

14   Plaintiffs and the Class also received no meaningful benefits, services or products from CMG's

15   membership programs.    CMG thus reaped unearned financial gains from the unauthorized

16   charges to Plaintiffs' and the Class' credit and debit cards.  This conduct is unjust and unlawful

17   and thus violates common law and California Civil Code section 1710.

18       134.   As a direct and proximate cause of CMG's misconduct, Plaintiffs and the Class

19   suffered actual damages in that they have paid monthly fees without receiving any benefits,

20   discounts or savings.

21       135.   On information and belief, CMG's misconduct was done intentionally and with

22   malice, and it is wanton and reckless and shows a reckless indifference to the interests of others.

23       136.   Plaintiff Cox and the California Subclass demand judgment against CMG for

24   actual and punitive damages for themselves and each California Subclass member, plus

25   attorneys' fees for the establishment of a common fund, interest, and costs.

26   ///

27   ///

28   ///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29ᵀᴴ Floor
San Diego, CA 92101

**NINTH CLAIM**
**For Fraudulent Misrepresentations/Omissions**
**Brought by Plaintiffs and the Class**
**Against Provide-Commerce**

137.   Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

138.   Common law fraud is the making of a knowingly false representation or concealment of a material fact with intent to deceive or induce reliance that causes justifiable reliance and resulting damages. California Civil Code section 1710 further defines deceit/fraud as either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it.

139.   Provide-Commerce represented through its website that it would not transmit Plaintiffs and the Class' billing information without authorization. Provide-Commerce makes this representation with the intent to induce Plaintiffs and the Class to purchase merchandise from Provide-Commerce under the belief that Provide-Commerce would protect their information. In actuality, Provide-Commerce transmits the information to its partner CMG and/or allows CMG to intercept the information during Class members' purchase transactions. CMG then makes unauthorized charges to Plaintiffs' and the Class' credit and debit accounts under the guise that Plaintiffs and the Class enrolled in a membership program, which they did not knowingly enroll in. Provide-Commerce then receives bounties or kickbacks from the unauthorized charges.

140.   Provide-Commerce also appears to offer Plaintiffs and the Class a complimentary savings benefit when, in reality, they are trying to enroll them in membership programs without their knowledge. Provide-Commerce also touts various programs, like FreeShipping.com Insiders-Club, as a legitimate savings club that provides coupons, gift cards, and other savings benefits to its members. In reality, the programs provide no meaningful benefits, products or

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1  services, and the enrollment is simply a pretext to begin charging Class members' debit and

2  credit cards.

3      141.   Provide-Commerce further misrepresents that Plaintiffs and the Class could

4  receive a "free" savings offer by providing some personal information, like their email address

5  and zip code.   Hidden in an entirely separate area on the webpage are deceptive terms and

6  conditions stating that Plaintiffs and the Class would be charged for enrolling in the membership

7  program.  Provide-Commerce knew, or reasonably should have known, that Plaintiffs and the

8  Class would likely not see the hidden terms and conditions and would not have provided any

9  information if they knew Provide-Commerce would send their billing information to CMG, and

10  that CMG would thereafter begin billing their credit and debit cards.   Provide-Commerce

11  intentionally hid and failed to disclose the fact that Plaintiffs and the Class were about to enter

12  into a separate transaction with CMG.   Instead, Provide-Commerce and CMG made the

13  advertisements appear like they were coming from Provide-Commerce as a free gift for being

14  loyal Provide-Commerce customers and to encourage future business.

15      142.   Additionally, Provide-Commerce concealed material information about the

16  savings offer and membership programs from Plaintiffs and the Class and failed to disclose that

17  Plaintiffs and the Class would be enrolled in the program and subject to monthly fees.

18      143.   Provide-Commerce also concealed the material fact that it was transmitting

19  Plaintiffs' and the Class' billing information to CMG without authorization.  At the same time,

20  Provide-Commerce made representations to Plaintiffs and the Class that billing information

21  would not be transmitted or used without authorization beyond what was necessary to fill

22  customers' original orders.  Plaintiffs and the Class were unwittingly enrolled in membership

23  programs while attempting to obtain a seemingly free savings benefit.  Provide-Commerce also

24  concealed and failed to disclose that it was financially benefiting from its partnership with CMG.

25      144.   Provide-Commerce were and continue to be under a duty to Plaintiffs and the

26  Class to disclose these facts because:

27      a.   Provide-Commerce is in a superior position to know the truth about the club

28  membership programs and the business practice of transmitting billing information to CMG

-30-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   through a data pass system; and

2       b.      Provide-Commerce actively concealed from Plaintiffs and the Class the true

3   nature of the club membership programs and their true practices with respect to the use of billing

4   information.

5       145.    Provide-Commerce intentionally represented and concealed from and/or failed to

6   disclose to Plaintiffs and the Class the facts described above with the intent to defraud, and for

7   the purpose of inducing Plaintiffs and the Class to provide their billing information, which was

8   later transmitted to CMG to involuntarily enroll Plaintiffs and the Class in illusory club

9   membership programs.  By concealing this material information, Provide-Commerce sought to

10  ensure that Plaintiffs and the Class would complete their transaction on the Provide-Commerce's

11  website while allowing them to still profit by giving that information to CMG without

12  authorization to enroll Plaintiffs and the Class in the sham program.  Provide-Commerce knew

13  that Plaintiffs and the Class would not have provided their billing information if all material

14  information was disclosed.  Despite this, Provide-Commerce fraudulently enrolled, or assisted

15  with fraudulently enrolling, Plaintiffs and the Class into membership programs so that CMG

16  could charge their credit and debit accounts without authorization and provide Provide-

17  Commerce with financial kickbacks.

18      146.    The misrepresentations and omissions are material in that a reasonable consumer

19  would find this information important when deciding whether to purchase products from

20  Provide-Commerce's website.    Had the misrepresented and concealed information been

21  disclosed to Plaintiffs and the Class, they would have acted differently by not providing their

22  billing information to Provide-Commerce, not attempting to receive the purported free savings

23  benefit, or by immediately canceling their membership before they were charged.

24      147.    Plaintiffs and the Class relied on Provide-Commerce's misrepresentations and

25  omissions and were damaged because unauthorized charges were made to their debit and credit

26  cards.  Further, Plaintiffs and the Class received no benefits, services or products from

27  FreeShipping.com Insiders-Club or any other CMG membership program.  Provide-Commerce

28  thus reaped unearned financial gains the unauthorized charges to Plaintiffs' and the Class' credit

1   and debit cards. This conduct is unjust and unlawful and thus violates California Civil Code

2   section 1710.

3   148.   Plaintiffs and the Class are further informed and believe that Provide-Commerce's

4   conduct was motivated by malice, fraud, and oppression, and was done in conscious disregard of

5   their rights. Punitive damages should be separately assessed against Provide-Commerce in an

6   amount that would punish and deter them from further engaging in fraud.

7   149.   Plaintiffs and the Class demand judgment against Provide-Commerce for actual

8   and punitive damages for themselves and each member of the Class, plus attorneys' fees for the

9   establishment of a common fund, interest, and costs.

### TENTH CLAIM
**For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Brought by Plaintiff Cox and the California Subclass**
**Against CMG**

12   150.   Plaintiff Cox refers to and incorporates by reference the above paragraphs as

13   though set forth fully herein.

14   151.   The Unfair Competition Law, Business & Professions Code § 17200, *et seq.*

15   ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or

16   practice. Unlawful business acts are those that violate federal, state, county, or municipal

17   statutes or codes, common law, or federal and state regulations.

18   152.   CMG's acts, practices, misrepresentations and omissions as herein alleged are

19   unlawful and violate the laws and statutes alleged herein, and thus amount to unfair competition

20   as set forth in the UCL. As a direct and proximate cause of CMG's violations of the UCL,

21   Plaintiff Cox and the California Subclass suffered an injury in fact and have lost money because,

22   among other things, they suffered unauthorized transmission or interception of their billing

23   information and unauthorized charges to their credit and debit cards, and because they were

24   charged for services and benefits they did not receive.

25   153.   To the extent CMG's advertisements contained terms that allowed CMG to obtain

26   Plaintiff Cox and the California Subclass' billing information absent affirmative and informed

27   authorization, those terms are unconscionable and thus unenforceable. And to the extent CMG

28   and Provide-Commerce's websites contained terms that allowed CMG to charge activation fees

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   and monthly fees associated with consumers purportedly enrolling or participating in any

2   membership programs, those terms are likewise unconscionable and thus unenforceable. As

3   discussed above, CMG's savings offers and membership programs are a sham.

4       154.   CMG's unlawful, unfair and fraudulent business practices, as described herein,

5   present a continuing threat to Plaintiff Cox, and the California Subclass, and the general public in

6   that they continue to wrongfully tout their sham savings offers and membership programs as

7   legitimate, continue to wrongfully obtain and mishandle the California Subclass members'

8   billing information, and continue to bill their credit and debit cards without authorization. In

9   addition, CMG has been unjustly enriched as a result of its conduct. Plaintiff Cox and the

10  California Subclass seek equitable relief because they have no other adequate remedy at law.

11  Absent equitable relief, CMG is likely to continue to injure consumers, reap unjust enrichment,

12  and harm the public's interest, thus engendering a multiplicity of judicial proceedings.

13      155.   CMG's acts and practices are unlawful because they violate California Civil Code

14  §§ 1572, 1668, 1709, 1710, 1770(a)(3), 1770(a)(5), 1770(a)(9), 1770(a)(14) and/or 1770(a)(17),

15  as described above.

16      156.   CMG's acts and practices are also unlawful because it violates, among other

17  things, §17500 of the Business and Professions Code, the Electronic Funds Transfer Act, 15

18  U.S.C. § 1693 *et seq.*, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, and

19  common law, as alleged herein.

20      157.   CMG violated the UCL by fraudulently misrepresenting and concealing from

21  and/or intentionally failing to disclose to Plaintiff Cox and the California Subclass the true facts

22  about its savings offers, its business practice of transmitting billing information without

23  authorization and its membership programs, as alleged herein.

24      158.   CMG's conduct was fraudulent and deceptive in violation of the UCL because

25  CMG actively misrepresented in, and/or concealed and omitted from, its advertising, marketing

26  and other communications, material information about the savings offers, membership programs

27  and the practices with respect to the use of consumers' personal billing.

28  ///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

-33-

159. As alleged herein, Plaintiff Cox and the California Subclass relied on these misrepresentations and omissions when providing Provide-Commerce with their billing information and purchasing products on its websites and, as a result, suffered an injury in fact and lost money.

160. CMG's conduct was unfair in violation of the UCL, because the injury to Plaintiff Cox and the California Subclass greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

161. CMG's conduct was also unfair as it violates the Credit Card companies' standard operating procedures and generally accepted business practices.

162. To this day, CMG continues to violate the UCL by continuing to misrepresent and actively conceal material information regarding its savings offers, membership programs, and data pass practices.

163. As a proximate result of CMG's violation of the UCL, CMG has been unjustly enriched and should be required to make restitution to Plaintiff Cox and the California Subclass and/or disgorge their ill-gotten profits pursuant to Business & Professions Code § 17203.

164. Plaintiff Cox and the California Subclass demand judgment against CMG for injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the conduct alleged herein, including promised discounts and savings that were not given, along with interest, attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

165. Plaintiff Cox and the California Subclass request that this Court issue preliminary and permanent injunctions against such acts and practices. Additionally, Plaintiff Cox and the California Subclass seek the recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring CMG to pay Plaintiff Cox and the Class' attorneys' fees and litigation expenses.

/ / /

/ / /

/ / /

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

### ELEVENTH CLAIM
**For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Brought by Plaintiffs and the Class**
**Against Provide-Commerce**

166.   Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

167.   The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or practice.   Unlawful business acts are those which are in violation of federal, state, county, or municipal statutes or codes, common law, or federal and state regulations.

168.   Provide-Commerce's acts, practices, misrepresentations and omissions as herein alleged are unlawful and violate the laws and statutes alleged herein, and thus amount to unfair competition as set forth in the UCL.   As a direct and proximate cause of Provide-Commerce's violations of the UCL, Plaintiffs and the Class suffered an injury in fact and have lost money because, among other things, they have suffered unauthorized transmission or interception of their billing information and unauthorized charges to their credit and debit cards, and because they were charged for services and benefits they did not want or receive.

169.   To the extent Provide-Commerce's website and advertisements contained terms that allowed Provide-Commerce to transfer their customers' billing information to CMG absent affirmative and informed authorization, those terms are unconscionable and thus unenforceable. And to the extent Provide-Commerce's website contained terms that allowed CMG to charge activation fees and monthly fees associated with customers purportedly enrolling or participating in any rewards programs, those terms are likewise unconscionable and thus unenforceable.   As discussed above, Provide-Commerce's seemingly free savings offer is nothing more than a sham.

170.   Provide-Commerce's unlawful, unfair and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs, the Class, and the general public in that they continue to wrongfully tout their sham coupon offer, continue to mishandle Class members' billing information, and continue to assist CMG in billing their credit and debit cards without authorization.   In addition, Provide-Commerce has been unjustly enriched as a result of its

-35-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1   conduct.   Plaintiffs and the Class seek equitable relief because they have no other adequate

2   remedy at law.   Absent equitable relief, Provide-Commerce is likely to continue to injure

3   consumers, reap unjust enrichment, and harm the public's interest, thus engendering a

4   multiplicity of judicial proceedings.

5           171.   Provide-Commerce's acts and practices are unlawful because they violate

6   California Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(3), 1770(a)(5), 1770(a)(9),

7   1770(a)(14) and/or 1770(a)(17), as described above.

8           172.   Provide-Commerce's acts and practices also are unlawful because they violate,

9   among other things, §17500 of the Business and Professions Code, and common law, as alleged

10   herein.

11           173.   Provide-Commerce violated the UCL by fraudulently misrepresenting and

12   concealing from and/or intentionally failing to disclose to Plaintiffs and the Class the true facts

13   about its saving offers and business practice of transmitting billing information without

14   authorization to CMG.

15           174.   Provide-Commerce's conduct was fraudulent in violation of the UCL, in that

16   Provide-Commerce actively misrepresented in, and/or concealed and omitted from, its

17   advertising, marketing and other communications, material information about the savings offer

18   and membership program and the practices with respect to the use of private consumer

19   information, including billing information, in a manner that has deceived and is likely to

20   continue to deceive consumers and the public.

21           175.   Plaintiffs and the Class relied on these misrepresentations and omissions when

22   providing Provide-Commerce with billing information and purchasing products on their websites

23   and, as a result, suffered an injury in fact and lost money.

24           176.   Provide-Commerce violated the UCL by representing to Plaintiffs and the Class

25   that their billing information would be secure and not transmitted to unauthorized parties, while

26   knowing that the information would be transmitted to CMG without explicit authorization.

27           177.   Provide-Commerce's conduct was unfair in violation of the UCL, because the

28   injury to Plaintiffs and the Class greatly outweighs any alleged countervailing benefit to

-36-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

1  consumers or competition under all of the circumstances.

2  178.  Provide Commerce's conduct was also unfair as it violates the Credit Card

3  companies' standard operating procedures and generally accepted business practices.

4  179.  To this day, Provide-Commerce continues to violate the UCL by continuing to

5  misrepresent and actively conceal material information regarding the coupon offers, membership

6  programs, and data pass practices.

7  180.  As a proximate result of Provide-Commerce's violations of the UCL, they have

8  been unjustly enriched and should be required to make restitution to Plaintiffs and the Class

9  and/or disgorge their ill-gotten profits pursuant to Business & Professions Code § 17203.

10  181.  Plaintiffs and the Class demand judgment against Provide-Commerce for

11  injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the

12  alleged conduct, including promised discounts and savings that were not given, along with

13  interest, attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

14  182.  Provide-Commerce's unlawful, unfair, and fraudulent business practices present a

15  continuing threat to Plaintiffs, the Class, and the general public in that Provide-Commerce

16  continues to wrongfully tout the sham savings offers and membership programs as a legitimate,

17  continues to mishandle Class members' billing information, and continues to bill their credit and

18  debit cards without authorization. In addition, Provide-Commerce has been unjustly enriched as

19  a result of its conduct. Plaintiffs and the Class seek equitable relief because they have no other

20  adequate remedy at law. Absent equitable relief, Provide-Commerce is likely to continue to

21  injure consumers, reap unjust enrichment, and harm the public's interest, thus engendering a

22  multiplicity of judicial proceedings.

23  183.  Plaintiffs and the Class request that this Court issue preliminary and permanent

24  injunctions against such acts and practices. Additionally, Plaintiffs and the Class seek the

25  recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil

26  Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other

27  authority requiring Provide-Commerce to pay Plaintiffs' and the Class' attorneys' fees and

28  litigation expenses.

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

### TWELFTH CLAIM
**For Invasion of the Constitutionally Protected Right To Privacy**
**Brought by Plaintiffs and the Class Against Provide-Commerce**
**And By Plaintiff Cox and the California Subclass Against CMG**

184.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

185.    The constitutionally guaranteed right of privacy unequivocally includes the right to control the dissemination of one's personal information, including debit card and bank account information, billing information, and home address ("Private Payment Information").

186.    Plaintiffs and the Class and California Subclass have legally protectable privacy interests in their Private Payment Information, and their ability to control the disclosure and dissemination of this information.

187.    Plaintiffs and the Class and California Subclass have reasonable expectations that their Private Payment Information would remain private from CMG when they entered into credit or debit card transactions with Provide-Commerce.  They were certainly not aware that Provide-Commerce would disclose to CMG, or allow CMG to obtain, this information.  Provide-Commerce did not disclose its intentions to provide Plaintiffs' and the Class' and California Subclass' Private Payment Information to CMG.  Provide-Commerce relied on the fact that Plaintiffs and the Class and California Subclass did not know it would disclose their Private Payment Information to CMG, and, instead, believed that Provide-Commerce would only use their Private Payment Information to process their purchase of merchandise from one of Provide-Commerce's websites, including Proflowers.com and RedEnvelope.com.

188.    Plaintiffs and the Class and California Subclass have a reasonable expectation that CMG – albeit an unknown entity to them at the time – would not attempt to obtain their private information  from Provide-Commerce and use it without ensuring that it had Plaintiffs' and the Class' and California Subclass' express written consent.  They were certainly not aware that Provide-Commerce would disclose to CMG, or allow CMG to obtain, this information.  CMG did not disclose its intention of obtaining Plaintiffs' and the Class' and California Subclass' Private Payment Information from Provide-Commerce in a manner that meaningfully gave

1    Plaintiffs or the Class and California Subclass sufficient awareness.

2        189.    Defendants' actions constitute a "serious" invasion of privacy resulting in

3    Plaintiffs and the Class and California Subclass being charged millions of dollars in unauthorized

4    charges to the debit and credit cards, and having their Private Payment Information - including

5    their private billing information, credit and debit card information, and billing addresses -

6    disclosed to defendant CMG without their authorization or consent.

7        190.    Defendants did not obtain Plaintiffs' or the Class' and California Subclass'

8    Private Payment Information from a public source.  Defendants realize that customers protect

9    their privacy rights in their Private Payment Information.

10       191.    As a proximate result of Defendants' above acts, Plaintiffs' and the Class' and

11   California Subclass' Private Payment Information was compromised and disclosed to defendant

12   CMG without their knowledge or consent, and all to the general damage in an amount according

13   to proof.

14       192.    Provide-Commerce and CMG are each guilty of oppression, fraud, or malice by

15   using Private Payment Information with a willful and conscious disregard of Plaintiffs' and the

16   Class' and California Subclass' right to privacy.

17       193.    Plaintiffs and the Class and California Subclass demand judgment against

18   Provide-Commerce and CMG for actual and punitive damages for themselves and each member

19   of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

20       194.    Unless and until enjoined, and restrained by order of this Court, Defendants'

21   wrongful conduct will continue to cause Plaintiffs and the Class and California Subclass, and the

22   public great and irreparable injury in that Private Payment Information maintained by Provide-

23   Commerce can be disclosed to others for profit and that unauthorized charged can be made to

24   their credit and debit card accounts.  Plaintiffs and the Class and California Subclass have no

25   adequate remedy at law for the injuries in that a judgment for the monetary damages will not end

26   the invasion of privacy for Plaintiffs and the Class and California Subclass, and the public.

27   / / /

28   / / /

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

-39-

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

**THIRTEENTH CAUSE OF ACTION**
**For Violations of Invasion of Privacy – Intrusion Into Private Matters**
**Brought by Brought by Plaintiffs and the Class Against Provide-Commerce**
**And By Plaintiff Cox and the California Subclass Against CMG**

195. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

196. One who intentionally intrudes upon the solitude or seclusion of another or his private affairs or concerns is subject to liability for invasion of privacy. The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff." Taus v. Loftus, 40 Cal.4th 683, 725, 54 Cal. Rptr. 3d 775, 807-808 (2007) (quoting Shulman v. Group W Productions, Inc., 18 Cal.4th 200 (1998).

197. Plaintiffs and the Class and California Subclass had reasonable expectations that their private payment and billing information would remain private from CMG when they entered into transactions with Provide-Commerce. They certainly were not aware that Provide-Commerce would disclose their billing information and billing addresses to CMG. Provide-Commerce did not disclose its intentions to share Plaintiffs' and the Class' and California Subclass' payment and billing information with CMG, and instead assured Plaintiffs and the Class and California Subclass that their private payment and billing information would not be shared or disclosed without their informed consent.

198. Provide-Commerce assisted CMG in obtaining Plaintiffs' and the Class' and California Subclass' private billing information without their knowledge or consent. Provide-Commerce represented to its customers that it would guard their private billing information and would not disclose this information to anyone else absent informed authorization. But Provide-Commerce passed this information on to CMG without obtaining authorization to do so. The manner in which Defendants invaded Plaintiffs' and the Class' and California Subclass' privacy rights is highly offensive to a reasonable person, as evidenced by the thousands of consumer complaints regarding Defendants' practices.

///

199.    As a proximate result of the above acts, Plaintiffs' and the Class' and California Subclass' billing information was used by Defendants for their own profit, all to the general damage in an amount according to proof.

200.    Defendants are guilty of oppression, fraud, or malice by disclosing the information in a willful and conscious disregard of Plaintiffs' and the Class' and California Subclass' rights to privacy.

201.    Plaintiffs and the Class demand judgment against Provide-Commerce and CMG for actual and punitive damages for themselves and each Class member, plus attorneys' fees for the establishment of a common fund, interest, and costs.

202.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiffs, Class members, and the public great and irreparable injury in that their private billing information maintained by Defendants can be disclosed to others for profit and that unauthorized charged can be made to their credit and debit card accounts.  Plaintiffs and the Class and California Subclass have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy.

## VII.   PRAYER FOR RELIEF

Plaintiffs, the Class, and the Subclasses pray for judgment against defendants as follows:

A.    An order certifying the Class and Subclasses and designating Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel;

B.    That the Court preliminarily and permanently enjoins defendants from engaging in the conduct alleged herein;

C.    Other injunctive and declaratory relief as may be appropriate;

D.    Restitution and disgorgement any ill-gotten profits from defendants to the extent permitted by applicable law, together with interest thereon from the date of payment;

E.    For statutory damages according to proof;

F.    For general damages according to proof;

G.    For special damages according to proof;

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

H.   For exemplary or punitive damages;

I.   A declaration that defendants are financially responsible for notifying the Class about the pendency of this action;

J.   Reasonable costs and attorneys' fees;

K.   Statutory pre-judgment interest; and

L.   For such other relief as the Court may deem proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves and the Class, demand a jury trial for all of the claims so triable.

Dated: February 15, 2011                 HARRISON PATTERSON & O'CONNOR LLP


By:   _____
      James R. Patterson
      Alisa A. Martin
      Attorneys for Plaintiffs and the Class

**BARON & BUDD, P.C.**
Bruce W. Steckler (pro hac vice pending)
Mazin A. Sbaiti, State Bar No. 275089
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181
bstecker@baronbudd.com
msbaiti@BaronBudd.com


*Attorneys for Plaintiffs & The Class*

CLASS ACTION COMPLAINT